UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO POLICY NUMBER MPL1757560.21,<br><br>Plaintiff,<br><br>v.<br><br>EVANGELOS DROSOS, and DROSOS LORENZO & ASSOCIATES, PC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Certain Underwriters at Lloyd's, London, Subscribing to Policy Number MPL1757560.21 ("Hiscox"), by and through counsel, Kennedys CMK LLP, brings this Complaint for Declaratory Judgment against Defendants Evangelos Drosos and Drosos Lorenzo & Associates, PC, (collectively, "Drosos") and alleges as follows:

## NATURE OF ACTION

1. Hiscox brings this action for a declaratory judgment pursuant to 28 U.S.C. § 2201, et seq., to obtain a declaration regarding its obligation to defend and indemnify Drosos against claims asserted against them in an underlying lawsuit, captioned as Spin Capital LLC v. Columbus LTACH, LLC d/b/a Silver Lake Hospital, et al., Docket Number ESX-L-3072-22, filed on or about May 25, 2022, in the Superior Court of New Jersey, Law Division, Essex County (the "Underlying Action").

2. In the Underlying Action, it is alleged that Hiscox's insureds, Evangelos Drosos and Drosos Lorenzo & Associates, PC, along with other entities formed by Evangelos Drosos, engaged in an embezzlement scheme to misappropriate and fraudulently collateralize payroll funds in order to obtain large upfront loans from accounts receivable lenders.

3. Hiscox seeks declaratory judgment that the allegations made against Drosos in the Underlying Action are not covered under the Hiscox Policy issued to Drosos Lorenzo & Associates, PC, because, among other reasons, the Policy contains a Misappropriation of Funds exclusion.

4. A copy of the Complaint in the Underlying Action, filed by Spin Capital LLC ("Spin") is attached hereto as **Exhibit A**.

5. A copy of the Second Amended Answer, Counterclaim, and Third-Party Complaint (the "Amended Third-Party Complaint") filed by Columbus LTACH, LLC, d/b/a Silver Lake Hospital ("Hospital") in the Underlying Action is attached hereto as **Exhibit B**.

6. In the Underlying Action, Spin seeks to collect amounts from the Hospital pursuant to Revenue Purchase Agreements and Security Agreements ("Agreements") executed by "Drosos & Associates PC d/b/a Drosos & Associates; Unique Painters Inc; Brick City Investment Group LLC d/b/a Grk Grill" (collectively, "Merchant"). **Exhibit A** at ¶ 6.

7. On or about June 10, 2022, Hospital filed an Answer, Counterclaim and Third-Party Complaint that was amended in a filing dated June 27, 2023.

8. In the Amended Third-Party Complaint, the Hospital asserts claims against Hiscox's insureds, Evangelos Drosos and Drosos Lorenzo & Associates, PC, and others, and alleges that Spin's claims and alleged security interest have arisen because "Drosos wrongly identified, characterized and therefore misrepresented, the fiduciary accounts containing [Hospital's] entrusted payroll and tax funds" as accounts receivable in order "to enter into certain 'Revenue Purchase Agreements' with one or more merchant cash advance lenders, including Spin [.]" **Exhibit B** at ¶ 7.

**PARTIES, JURISDICTION, AND VENUE**

9. Underwriters at Lloyd's, London, is an unincorporated association or market for insurance established and located in London, England. The Lloyd's member subscribing to Policy Number MPL1757560.21 is Syndicate 3624, whose sole owner is Hiscox Dedicated Corporate Member Limited, a United Kingdom corporation. Hiscox Dedicated Corporate Member Limited is a wholly owned subsidiary of Hiscox plc, a United Kingdom holding company. Hiscox plc, in turn, is a subsidiary of Hiscox Ltd., a publicly traded entity incorporated in Bermuda and headquartered in London, England.

10. Drosos Lorenzo & Associates, PC, is a professional corporation incorporated under the laws of the State of New Jersey, with a principal place of business in New Jersey.

11. Evangelos Drosos is an individual who resides in the State of New Jersey.

12. There exists an actual and justiciable controversy between and among the parties concerning their respective rights and obligations under a certain policy of insurance with respect to the Underlying Action, pursuant to 28 U.S.C. § 2201.

13. This Court possesses jurisdiction over this action under 28 U.S.C. § 1332 because Plaintiff Hiscox and the Defendants are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.

14. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Hiscox's claim occurred in this judicial district within the State of New Jersey, one or more parties reside, maintain registered offices and/or conduct business in this district, and the Underlying Action is pending in a New Jersey state court in this district.

## FACTUAL BACKGROUND

A.   **Spin's Complaint Against the Hospital**

15.   In its Complaint filed in the Underlying Action on or about May 25, 2022, Spin alleges it entered into two Revenue Purchase Agreements ("Purchase Agreements") with Merchant. **Exhibit A** at ¶ ¶ 6-7.

16.   The first Revenue Purchase Agreement was allegedly executed on April 6, 2021 ("Purchase Agreement 1"). In Purchase Agreement 1, Spin allegedly purchased "20% of Merchant's total future receipts up to the sum of $5,246,500.00 . . . in exchange for the upfront purchase price of $3,500,000.00." **Exhibit A** at ¶ 6.

17.   The second Revenue Purchase Agreement was allegedly executed on April 15, 2021 ("Purchase Agreement 2"). In Purchase Agreement 2, Spin allegedly purchased "20% of Merchant's total future receipts up to the sum of $4,497,000.00 . . . in exchange for the upfront purchase price of $3,000,000.00." **Exhibit A** at ¶ 7.

18.   Spin alleges that pursuant to the Purchase Agreements, "Merchant agreed to pay the Purchased Amounts to [Spin] via daily remittances of $45,000.00 (Purchase Agreement No. 1) and $33,000.00 (Purchase Agreement No. 2) [.]" **Exhibit A** at ¶ 10.

19.   Spin further alleges that "[i]n connection with the Purchase Agreements, Merchant and [Spin] entered into security agreements . . . pursuant to which Merchant granted [Spin] a security interest in, among other things, all of its accounts receivable." **Exhibit A** at ¶ 11.

20.   Spin also alleges that if Merchant defaulted under the Purchase Agreements, Spin "was entitled to collect the full outstanding balance owed by Merchant and could

'exercise any and all rights and remedies of a secured party under Uniform Commercial Code Article 9.'" **Exhibit A** at ¶ 13.

21. Spin alleges that Merchant defaulted under the Purchase Agreements. **Exhibit A** at ¶¶ 15-18.

22. Spin alleges that Merchant provided services to the Hospital, and that Hospital "regularly pays money to Merchant and is an 'account debtor' of Merchant's under the UCC." In other words, Spin alleges that Hospital is an accounts receivable debtor of Merchant. **Exhibit A** at ¶ 22.

23. Spin alleges that it notified the Hospital, via UCC notices, of its right to collect Merchant's accounts receivable, but that Hospital did not remit payment to Spin, and instead continued to remit payment to Merchant, including the amount of $7,758,236.13 via various bank transfers and wires occurring between December 28, 2021, and May 5, 2022. **Exhibit A** at ¶¶ 23-26.

24. Spin alleges that the Hospital's continued payments to Merchant, instead of Spin, constitute a violation of UCC notices, and that Spin is entitled to collect the amounts due on the Purchase Agreements from the Hospital pursuant to causes of action sounding in "Breach of Contract - Failure to Pay Sums Due on Accounts Assigned to Plaintiff," and "Account Stated and Non-Dischargeability of any Payments Wrongfully Paid to Merchant." **Exhibit A** at ¶¶ 27-49.

**B.     The Hospital's Amended Third-Party Complaint Against Drosos**

25. In its Amended Third-Party Complaint, the Hospital alleges that the amounts sought by Spin in its Complaint are not, in fact, accounts receivable, but that Drosos misappropriated funds the Hospital had sent to Drosos for payroll taxes, and held those funds

out as accounts receivable to accounts receivable lenders, like Spin, in order to obtain large up-front loans. **Exhibit B** at ¶¶ 4-7.[1]

26. It is alleged that in 2014, Drosos approached the Hospital and held itself out as a reputable accounting firm who could assist the Hospital with payroll taxes, but that in reality, the principal of Drosos Lorenzo & Associates, PC, Evangelos Drosos, is not a licensed accountant. **Exhibit B** at ¶ 2.

27. It is alleged that since 2014, the Hospital "wired Drosos entrusted funds for its payroll, including, federal and state payroll taxes," but that "Drosos underpaid and . . . failed to remit the federal and state taxes". **Exhibit B** at ¶ 4.

28. The Hospital further alleges that "Drosos wrongly identified, characterized and therefore misrepresented, the fiduciary accounts containing [the Hospital's] entrusted payroll and tax funds as a basis to enter into certain 'Revenue Purchase Agreements' with one or more merchant cash advance lenders, including Spin [.]" **Exhibit B** at ¶ 7.

29. In connection with these allegations, the Hospital's Amended Third-Party Complaint seeks "to recover stolen entrusted funds unlawfully converted by Evangelos Drosos [.]" **Exhibit B** at ¶ 8.

30. The Hospital alleges that as part of Drosos' purported payroll tax services, the Hospital "would wire money into an account under the care, custody and control of Drosos to be held in trust until disbursed to employees and the federal and state governments. Such funds should not have been commingled with other accounts, nor should such funds have been misidentified, or otherwise mischaracterized so that they could stand as purported

---

[1] The Hospital's Amended Third-Party Complaint, containing the paragraphs cited by Hiscox, begins on page 17 of Exhibit B. The Hospital's Amended Third-Party Complaint is filed as Exhibit B without the Amended Third-Party Complaint's accompanying exhibits, due to the volume of exhibits attached to the Amended Third-Party Complaint.

security for Drosos to secure accounts receivable financing because these entrusted funds constituted money earned by [the Hospital's] employees and owed to the federal and state governments." **Exhibit B** at ¶ 38.

31. The Hospital alleges that in order to facilitate its scheme, Drosos contracted with CASA Payroll Service, LLC ("CASA"), and allegedly took advantage of CASA's lack of due diligence and violation of best practices protocols to "achieve the objects of his nefarious embezzlement scheme by stealing the payroll taxes and fraudulently collateralizing the hospital payroll [.]" **Exhibit B** at ¶ 47; see also **Exhibit B** at ¶¶ 39-55.

32. The Amended Third-Party Complaint also includes photos and exhibits evidencing Drosos facilitating transfers of the Hospital's payroll funds into Drosos' own bank accounts. E.g., **Exhibit B** at ¶ 61.

33. Drosos' alleged activities are purported to have begun in the first quarter of 2015, at the latest, with Evangelos Drosos converting "funds designated for the payment of payroll taxes for his own purposes." **Exhibit B** at ¶ 69.

34. Drosos' embezzlement is alleged to have resulted in the Hospital incurring over $12,000,000 in tax liabilities. **Exhibit B** at ¶¶ 66-73.

35. Drosos is also alleged to have forged IRS offer of compromise documents, as well as other IRS forms, in order to conceal his activities and steal additional amounts from the Hospital. **Exhibit B** at ¶¶ 78-101.

36. The Hospital further alleges that "stealing millions of dollars over time from [the Hospital] was not sufficient to satisfy Drosos' insatiable desire for money, and so Drosos began entering into 'revenue purchase agreements' that would provide Drosos with large, up-

front payments that would be paid back over time to the loan sharks using [the Hospital's] stolen money [.]" **Exhibit B** at ¶ 102.

37. The Hospital's Amended Third-Party Complaint contains additional information and evidence related to Drosos' allegedly fraudulent scheme, and its relation to Spin, including images of bank account transfers (such as transfers out of Drosos' client escrow accounts), invoices, and text messages between Evangelos Drosos and the principal of Spin. **Exhibit B** at ¶¶ 103-141.

38. The Hospital's Amended Third-Party Complaint asserts causes of action sounding in (1) conversion, against Drosos and all third-party defendants excluding CASA; (2) conspiracy to commit conversion, against Drosos and all third-party defendants; (3) fraud, against Drosos and all third-party defendants; (4) conspiracy to commit fraud, against Drosos and all third-party defendants; (5) breach of fiduciary duty, against Drosos, CASA, other third-party defendants; (6) accounting, against Drosos and all third-party defendants; (7) imposition of a constructive trust, against Drosos and all third-party defendants; (8) restraint on collection under New Jersey's Uniform Commercial Code against Spin; (9) RICO conspiracy against Drosos and all third-party defendants excluding CASA; and (10) negligence and negligent misrepresentation against CASA, alleging CASA as a payroll vendor should have caught Drosos' alleged misappropriation of funds. **Exhibit B** at ¶¶ 149-306.

39. The Amended Third-Party Complaint also contains two causes of action pled against CASA in the alternative. **Exhibit B** at ¶¶ 307-317.

**C.        The Hiscox Policy**

40.     Hiscox issued a claims made and reported Professional Liability Policy, Policy Number MPL1757560.21, to Drosos Lorenzo & Associates, PC, for the November 29, 2021 to September 22, 2022 policy period (the "Policy"). **Exhibit C**.

41.     The Policy's Insuring Agreement provides as follows:

> I. **What is covered**
>
> **We** will pay up to the **coverage part limit** for **damages** and **claim expenses** in excess of the **retention** for covered claims against **you** alleging a negligent act, error, or omission in **your accounting services** performed on or after the **retroactive date**, including but not limited to:
>
> 1. Breach of any duty of care;
> 2. Negligent misstatement or negligent misrepresentation ; or
> 3. **Personal and advertising injury,**
>
> provided the claim is first made against you during the policy period and is reported to us in accordance with Section V. Your obligations.

**Exhibit C** at p. 11.

42.     The Policy contains a number of exclusions under Section VI., Exclusions - What is not covered. The Policy's exclusions state "We will have no obligation to pay any sums under this Coverage Part, including any damages or claim expenses, for any claim . . ." **Exhibit C** at p. 13.

43.     Exclusion 22 in the Policy, entitled "Misappropriation of funds" excludes coverage for the allegations in the Hospital's Amended Third-Party Complaint. Exclusion 22 excludes coverage for a claim:

> based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property; however, this exclusion will not apply to an otherwise covered **claim** alleging **your** negligent performance

> of accounting services and resulting from a theft, misappropriation, commingling, or conversion committed by someone other than an **insured**.

**Exhibit C** at p. 15.

44. Exclusion 17 in the Policy, entitled "Intentional acts" excludes coverage for the allegations in the Hospital's Amended Third-Party Complaint. Exclusion 17 excludes coverage for a claim:

> based upon or arising out of any actual or alleged fraud, dishonest, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions, except that:
>
> a. **we** will pay **claim expenses** until there is a final adjudication establishing such conduct; and
>
> b. this **exclusion** will not apply to otherwise covered intentional acts or omissions resulting in **personal and advertising injury**.
>
> This exclusion will apply to the **named insured** or **subsidiary** only if the conduct was committed or allegedly committed by any:
>
> a. partner, director, officer, or member of the board (or equivalent position) of the **named insured** or **subsidiary;** or
>
> b. employee of the **named insured** or **subsidiary** if any partner, director, officer, member of the board (or equivalent position) of the **named insured** or **subsidiary** knew or had reason to know of such conduct by the employee.
>
> This exclusion will apply separately to each **insured** and will not apply to any **insured** who did not commit, participate in, acquiesce to, or ratify such conduct committed by another **insured.**

**Exhibit C** at p. 15.

45. Exclusion 12 in the Policy, entitled "Excluded statutory violations" excludes coverage for certain statutory violations alleged in the Hospital's Amended Third-Party Complaint. Exclusion 12 excludes coverage for a claim:

>
> based upon or arising out of any actual or alleged violation of the following laws:
>
> a. the Securities Act of 1933;
> b. the Securities Exchange Act of 1934;
> c. any state blue sky or securities laws;
> d. the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.; or
> e. the Employee Retirement Income Security Act of 1974,
>
> all including as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law and any rules or regulations promulgated under such laws.
>
> However, part e of this exclusion will not apply to the extent you are deemed a fiduciary solely because of your performance of accounting services for an employee benefit plan on behalf of your client.

**Exhibit C** at p. 14.

  46. Exclusion 10 in the Policy, entitled "Excluded costs and damages" excludes coverage for certain damages and remedies sought in the Hospital's Amended Third-Party Complaint. Exclusion 10 excludes coverage for a claim:

> to the extent it seeks or includes:
>
> a. fines, penalties, taxes, or sanction against **you**;
>
> b. overhead costs, general business expenses, salaries, or wages incurred by **you**;
>
> c. the return, reduction or restitution of your fees, commissions, profits, or charges for goods provided or services rendered;
>
> d. liquidated or multiple damages;
>
> e. restitution, disgorgement of profits, any advantage to which you were not legally entitled, or unjust enrichment; or
>
> f. the cost of complying with injunctive relief.

**Exhibit C** at p. 14.

47. The Policy provisions quoted above apply to preclude and/or limit coverage for the allegations in the Hospital's Amended Third-Party Complaint.

**D.        Hiscox's Coverage Position**

48. Before the Underlying Action was noticed to Hiscox, counsel appeared in the Underlying Action on behalf of Drosos, and all other entities comprising "Merchant". Drosos' personal counsel jointly represented Drosos and all other entities comprising Merchant.

49. By email dated September 19, 2022, Drosos Lorenzo & Associates, PC, through personal counsel, noticed the Underlying Action to Hiscox.

50. By letter dated November 16, 2022, Hiscox agreed to defend Drosos Lorenzo & Associates, PC, and Evangelos Drosos in the Underlying Action, subject to a reservation of rights. Hiscox further advised Drosos of their right to independent counsel.

51. Personal counsel for Drosos Lorenzo & Associates, PC, and Evangelos Drosos, declined to represent Drosos in the Underlying Action, and Drosos agreed to be represented by Howard Mankoff of Marshall Dennehey.

52. Mr. Mankoff advised Hiscox that he would proceed to represent Drosos, as well as all entities comprising "Merchant", at the request of Drosos.

53. Hiscox, as a courtesy to its insured, allowed Mr. Mankoff to represent all entities comprising Merchant, as well as Drosos, in the Underlying Action, but Hiscox has solely agreed to defend Drosos Lorenzo & Associates, PC, and Evangelos Drosos in the Underlying Action, subject to its reservation of rights.

54. Upon receipt and review of the Hospital's recently filed Amended Third-Party Complaint, as well as the exhibits thereto, Hiscox determined coverage for the allegations in

the Amended Third-Party Complaint was precluded by Exclusion 22, the "Misappropriation of funds" exclusion.

55. By letter dated September 19, 2023, Hiscox informed Drosos of its coverage determination in response to the Amended Third-Party Complaint, and informed Drosos that Hiscox would be seeking declaratory judgment that it has no coverage obligations under the Policy for the Underlying Action. **Exhibit D**.

## COUNT ONE
## REQUEST FOR DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY – MISAPPROPRIATION OF FUNDS EXCLUSION

56. Hiscox repeats and re-alleges Paragraphs 1 through 55 as if set forth at length herein.

57. Exclusion 22 in the Policy, entitled "Misappropriation of funds", excludes coverage for claims:

> based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property; however, this exclusion will not apply to an otherwise covered claim alleging your negligent performance of accounting services and resulting from a theft, misappropriation, commingling, or conversion committed by someone other than an insured.

58. The allegations in the Hospital's Amended Third-Party Complaint are based upon, or arise out of, the actual or alleged theft, misappropriation, commingling or conversion of funds, monies, assets, or property.

59. The allegations in the Hospital's Amended Third-Party Complaint do not result from a theft, misappropriation, commingling, or conversion committed by someone other than an insured.

60. Hiscox is entitled to a declaration that it has no obligation to defend or indemnify Drosos in the Underlying Action pursuant to the terms of Exclusion 22 in the Policy, entitled "Misappropriation of funds".

61. There is a real, substantial, and justiciable issue in controversy between the parties hereto with respect to the availability of coverage under the Hiscox Policy for the claims asserted in the Underlying Action.

62. A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time because Hiscox has no other adequate remedy at law which will resolve the current controversy.

## COUNT TWO
## REQUEST FOR DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY – INTENTIONAL ACTS EXCLUSION

63. Hiscox repeats and re-alleges Paragraphs 1 through 62 as if set forth at length herein.

64. Exclusion 17 in the Policy, entitled "Intentional Acts", excludes coverage for claims:

> based upon or arising out of any actual or alleged fraud, dishonest, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions . . .

65. The allegations in the Hospital's Amended Third-Party Complaint are based upon, or arise out of, actual or alleged fraud, dishonest, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions.

66. None of the exceptions to the exclusionary language stated in Exclusion 17 are applicable.

67. Hiscox is entitled to a declaration that it has no obligation to defend or indemnify Drosos in the Underlying Action pursuant to the terms of Exclusion 17 in the Policy, entitled "Intentional Acts".

68. There is a real, substantial, and justiciable issue in controversy between the parties hereto with respect to the availability of coverage under the Hiscox Policy for the claims asserted in the Underlying Action.

69. A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time because Hiscox has no other adequate remedy at law which will resolve the current controversy.

## COUNT THREE
## REQUEST FOR DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY – FAILURE TO SATISFY INSURING AGREEMENT

70. Hiscox repeats and re-alleges Paragraphs 1 through 69 as if set forth at length herein.

71. The Insuring Agreement of the Policy provides, in relevant part, that the Policy only covers "a negligent act, error, or omission in your accounting services performed on or after the retroactive date [.]"

72. The allegations in the Hospital's Amended Third-Party Complaint do not satisfy the Insuring Agreement, because, among other reasons, the Hospital does not allege a negligent act, error, or omission in Drosos' accounting services. The Hospital alleges Drosos is not an accountant, and the Hospital's claims against Drosos do not sound in negligence.

73. The allegations in the Hospital's Amended Third-Party Complaint do not satisfy the Policy's Insuring Agreement, because, among other reasons, the Policy's retroactive date is May 31, 2015, and the Hospital alleges Drosos began misappropriating funds in 2014, and/or by the first quarter of 2015.

74. Hiscox is entitled to a declaration that it has no obligation to defend or indemnify Drosos in the Underlying Action pursuant to the terms of the Policy's Insuring Agreement.

75. There is a real, substantial, and justiciable issue in controversy between the parties hereto with respect to the availability of coverage under the Hiscox Policy for the claims asserted in the Underlying Action.

76. A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time because Hiscox has no other adequate remedy at law which will resolve the current controversy.

## COUNT FOUR
## REQUEST FOR DECLARATORY JUDGMENT – NO DUTY TO INDEMNIFY – EXCLUSIONS 10 AND 12

77. Hiscox repeats and re-alleges Paragraphs 1 through 76 as if set forth at length herein.

78. Exclusion 10 excludes coverage for certain costs and remedies sought by the Hospital in its Amended Third-Party Complaint.

79. Exclusion 12 excludes coverage for certain statutory violations alleged by the Hospital in its Amended Third-Party Complaint.

80. Hiscox is entitled to a declaration that it has no obligation to indemnify Drosos in the Underlying Action pursuant to the terms of Exclusions 10 and 12 in the Policy.

81. There is a real, substantial, and justiciable issue in controversy between the parties hereto with respect to the availability of coverage under the Hiscox Policy for the claims asserted in the Underlying Action.

82. A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time because Hiscox has no other adequate remedy at law which will resolve the current controversy.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hiscox respectfully requests a declaration that:

A) Hiscox has no obligation to defend or indemnify Drosos in connection with the Underlying Action, and is entitled to withdraw from the defense of Drosos;

B) For such other relief as is just and equitable herein.

Dated: September 29, 2023

By: /s/ Tyler J. Pierson
Margaret Catalano
Tyler J. Pierson
**KENNEDYS CMK LLP**
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920
Phone: (908) 848-6300
Fax: (908) 647-8390
Meg.Catalano@kennedyslaw.com
Tyler.Pierson@kennedyslaw.com
*Attorneys for Plaintiff*