UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>CERTAIN UNDERWRITERS AT LLOYD'S,<br>LONDON, SUBSCRIBING TO POLICY<br>NUMBER MPL1757560.21,<br><br>           Plaintiff,<br><br>   v.<br><br><br>EVANGELOS DROSOS, and DROSOS<br>LORENZO & ASSOCIATES, PC,<br><br>           Defendants.</td><td>Civ. No. 2:23-cv-20801 (WJM)<br><br><br><br>OPINION</td></tr>
</table>

**WILLIAM J. MARTINI, U.S.D.J.**

    Plaintiff Certain Underwriters at Lloyd's, London, Subscribing to Policy Number MPL1757560.21 brings this coverage action concerning whether Defendants, Evangelos Drosos ("Drosos") and Drosos Lorenzo & Associates, PC, are entitled to professional liability coverage for an underlying lawsuit filed in New Jersey state court.

    This matter is now before the Court on Plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and to dismiss Defendants' counterclaims pursuant to Rule 12(b)(6). ECF No. 11. For the reasons set forth below, the motion is **DENIED in part and GRANTED in part.**

### I.    BACKGROUND

    The instant dispute relates to an underlying lawsuit filed on May 25, 2022 by Spin Capital, LLC ("Spin"), an accounts receivable lender, against Columbus LTACH, LLC d/b/a Silver Lake Hospital ("Columbus LTACH"), a hospital, in the Superior Court of New Jersey (the "Underlying Action"). Compl. ¶ 1, ECF No. 1. In response to Spin's complaint, Columbus LTACH asserted third-party claims against Defendants and other entities. *Id.* ¶ 7. Plaintiff now seeks declaratory judgment as to whether Columbus LTACH's third-party claims against Defendants are covered under a Professional Liability Policy ("Policy") that it issued to Defendants. *Id.* ¶ 3.

#### A.  The Underlying Action

    In the Underlying Action, Spin asserts that in April 2021, it entered into two revenue purchase agreements ("RPAs") with Drosos & Associates PC d/b/a Drosos & Associates, Unique Painters Inc., and Brick City Investment Group LLC d/b/a GRK Grill (collectively,

"Merchant Entities").[1] Compl. Ex. A ("Spin Compl.") ¶¶ 6-7, ECF No. 1-1. The RPAs list Drosos as the guarantor. Spin Compl. Exs. A, B. Pursuant to the RPAs, Spin purchased a percentage of the Merchant Entities' total future receipts for a combined upfront purchase price of $6,500,000.00 and the Merchant Entities agreed to repay Spin via daily remittances totaling $78,000.00. Spin Compl. ¶¶ 6-7, 10. Spin alleges that by September 24, 2021, the Merchant Entities completely defaulted on their obligations under the RPAs and failed to remit to Spin any of their receivables. Id. ¶¶ 16-18.

### 1. Spin's Claims against Columbus LTACH

Spin's Complaint seeks to recover the money owed under the RPAs from Columbus LTACH. Spin asserts that Columbus LTACH is an "account debtor" of the Merchant Entities because it regularly pays money to the entities in exchange for accounting services. Id. ¶¶ 21-22. As such, Spin asserts breach of contract and account stated claims against Columbus LTACH, alleging that it failed to comply with UCC Lien Notices directing Columbus LTACH to forward the balance that it owes to the Merchant Entities to Spin as an assignee. Id. ¶¶ 23-49.

### 2. Columbus LTACH's Third-Party Claims against Defendants

On June 13, 2022, Columbus LTACH answered Spin's Complaint, asserted a counterclaim against Spin, and filed a Third-Party Complaint against Defendants, the Merchant Entities, and others. Answer Ex. A, ECF No. 8-1. Nine causes of action are asserted against Defendants in the currently operative Second Amended Third-Party Complaint, which was filed on June 27, 2023, including claims for conversion, fraud, and breach of fiduciary duty.[2] Compl. Ex. B ("SATPC"), ECF No. 1-2.

Specifically, Columbus LTACH claims that it hired Defendants and Drosos & Associates PC (collectively, the "Drosos Entities") to perform payroll services for its hospital in 2014. SATPC ¶¶ 1-2. As part of these services, from 2014 to May 2022, Columbus LTACH wired employee payroll and tax funds to the Drosos Entities, who represented that it would hold the funds in trust before remitting the payroll funds to Columbus LTACH employees and the tax funds to the federal and state governments. Id. ¶¶ 150, 179. The Drosos Entities represented to Columbus LTACH that the entrusted funds would not be used for any other purpose. Id. ¶ 180. However, it is alleged that in 2015, the Drosos Entities began misappropriating these entrusted funds and converting them to their own personal use and enjoyment. Id. ¶ 151. Specifically, Columbus LTACH asserts that the Drosos Entities mischaracterized the fiduciary accounts containing Columbus LTACH's entrusted payroll and tax funds and used these funds to enter into revenue purchase agreements with merchant cash advance lenders, including the two RPAs with Spin that are now at issue. Id. ¶ 7. Additionally, Columbus LTACH alleges that the Drosos Entities failed to properly remit the correct amount of tax funds to the government despite

---

[1] The record is unclear as to the exact relationship between Defendants, Drosos & Associates PC, and the Merchant Entities.

[2] The same nine counts are asserted against the Defendants in each version of Columbus LTACH's Third-Party Complaint.

their repeated assurances to Columbus LTACH that the taxes had been properly remitted, and concealed from Columbus LTACH the true nature and extent of Columbus LTACH's tax liability. *Id.* ¶¶ 4, 185.

## B. The Instant Action

From November 29, 2021 to September 22, 2022, Defendants were covered under a Professional Liability Policy issued by Plaintiff. Compl. ¶ 40, ECF No. 1. Accordingly, on September 19, 2022, Defendants noticed the Underlying Action to Plaintiff. *Id.* ¶ 49.

By letter dated November 16, 2022, Plaintiff agreed to defend Defendants in the Underlying Action. *Id.* ¶ 50. Plaintiff asserts that the letter agreed to provide a defense subject to a complete reservation of rights. *Id.* ¶¶ 50, 53. However, after reviewing Columbus LTACH's Second Amended Third-Party Complaint, which was filed on June 27, 2023, Plaintiff determined that coverage for Columbus LTACH's allegations was precluded by the Policy's "Misappropriation of Funds" exclusion. *Id.* ¶ 54. Accordingly, by letter dated September 19, 2023, Plaintiff informed Defendants of its coverage determination. Compl. ¶ 55. Plaintiff also informed Defendants that it would "continue to provide a courtesy defense to [Defendants] while [it sought] a judicial determination of its coverage obligations, if any, under the Policy." Compl. Ex. D at 7, ECF No. 1-4.

Plaintiff commenced the instant declaratory judgment action on September 29, 2023, seeking a declaration that they have no duty to defend or indemnify Defendants under the terms and exclusions of the Policy.[3] Defendants answered the complaint on December 13, 2023, and assert three counterclaims against Plaintiff for breach of the duty of good faith and fair dealing, declaratory judgment, and breach of contract. Answer, ECF No. 8. On January 16, 2024, Plaintiff filed the instant motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and to dismiss Defendants' counterclaims pursuant to Rule 12(b)(6). Mov. Br., ECF No. 11. Defendants filed an opposition brief on February 26, 2024. Opp. Br., ECF No. 16. Plaintiff filed a reply on March 1, 2024. Reply Br., ECF No. 17.

## II.   LEGAL STANDARD

### A. Rule 12(c)

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings may not be 'granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law.' In considering these motions, 'we must accept as true all facts presented in the complaint and answer and draw all reasonable inferences in favor of the non-moving party.'" *Berkley Specialty Ins. Co. v. Masterforce Constr. Corp.*, No. 21-1287, 2023 WL 3378003, at *1 n.1 (3d Cir. May 11, 2023) (citations omitted). "In deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings." *Mele v. Fed. Rsrv. Bank*

---

[3] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). The parties do not dispute that New Jersey law applies.

*of New York*, 359 F.3d 251, 257 (3d Cir. 2004). "An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint." *Dovale v. Marketsource, Inc.*, No. CIV.A. 05-2872, 2006 WL 2385099, at *5 (D.N.J. Aug. 17, 2006).

### B. Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotation marks omitted) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The complaint's factual allegations need not be detailed, but they must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This facial-plausibility standard is met where the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   ANALYSIS

Plaintiff makes three arguments in its moving brief: (1) the Policy's Misappropriation of Funds exclusion precludes coverage; (2) Plaintiff appropriately reserved its rights; and (3) Defendants' counterclaims must be dismissed. The Court will address each argument in turn.

### A. The Misappropriation of Funds Exclusion Applies

The first question before the Court is whether the Misappropriation of Funds exclusion in the Policy would bar coverage with respect to Columbus LTACH's allegations against Defendants. *See Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 15 F. Supp. 2d 561, 563 (D.N.J. 1998) (noting that whether a contract exclusion bars coverage is a threshold question to be addressed before the parties' estoppel arguments). The exclusion is located at paragraph 22 under "Section VI. Exclusions – What is not covered" of the Policy and reads:

> We will have no obligation to pay any sums under this Coverage Part, including any damages or claim expenses, for any claim: . . . . based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property; however, this exclusion will not apply to an otherwise covered claim alleging your negligent performance of accounting services and resulting from a theft,

4

misappropriation, commingling, or conversion committed by someone other than an insured.

Compl. Ex. C. at 16 ¶ 22, ECF No. 1-3 (formatting omitted). Applying accepted principles of insurance policy interpretation to the instant dispute, the Court finds that the Misappropriation of Funds exclusion applies to Columbus LTACH's claims.

### 1. Insurance Policy Interpretation Principles

"As contracts of adhesion, [insurance] policies are subject to special rules of interpretation." *Longobardi v. Chubb Ins. Co. of New Jersey*, 582 A.2d 1257, 1260 (N.J. 1990). "In the first instance, the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264-65 (N.J. 2001). "If the language is clear, that is the end of the inquiry." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008). "If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." *Id.* "When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Zacarias*, 775 A.2d at 1264.

Regarding the interpretation of policy exclusions, the Supreme Court of New Jersey has noted that such exclusions "must be narrowly construed" and that "the burden is on the insurer to bring the case within the exclusion." *Flomerfelt v. Cardiello*, 997 A.2d 991, 996-97 (N.J. 2010) (citation and internal quotation marks omitted). "As a result, exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Id.* (citations omitted). However, "'far-fetched interpretation[s]' do not create ambiguity, and 'courts must be careful not to disregard the "clear import and intent" of a policy's exclusion.'" *Authentic Title Servs., Inc. v. Greenwich Ins. Co.*, No. CV184131, 2020 WL 6739880, at *4 (D.N.J. Nov. 17, 2020) (quoting *Flomerfelt*, 997 A.2d at 997) (alteration in original).

"An insurer has a duty to defend an insured when the allegations contained in a complaint fall within the coverage of a liability insurance policy." *Hartford Ins. Co. of the Midwest v. Meecorp Cap. Markets, LLC*, No. 10-CV-6441, 2012 WL 12905847, at *5 (D.N.J. Dec. 27, 2012); *see Voorhees v. Preferred Mut.*, 607 A.2d 1255 (N.J. 1992). "Essential to any evaluation of a claim that an insurer has a duty to defend is a comparison of the factual allegations in the complaint with the coverage language of the policy." *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1042 (N.J. 2011). In evaluating an insurer's duty to defend, "the complaint should be laid alongside the policy and a determination [should be] made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured." *Flomerfelt*, 997 A.2d at 998 (citation and internal quotation marks omitted). "[I]n making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the carrier's duty to defend. When the two correspond, the duty to

defend arises, irrespective of the claim's actual merit." *Kent Motor Cars, Inc.*, 25 A.3d at 1042 (citations and internal quotation marks omitted).

### 2. The Misappropriation of Funds Exclusion is Unambiguous

The Court finds that the plain language of the Misappropriation of Funds exclusion is unambiguous. The New Jersey Supreme Court, along with other courts in this district, have previously interpreted substantially similar exclusions.[4] Specifically, the phrase "arising out of" has been defined "to mean 'originating from, growing out of or having a substantial nexus.'" *Authentic Title Servs., Inc.*, 2020 WL 6739880, at *5 (quoting *Flomerfelt*, 997 A.2d at 1004). "Conversion" has been defined as the "wrongful exercise of dominion and control over property of another without authorization and to the exclusion of the owner's rights in that property." *Id.* (internal quotation marks omitted) (quoting *Chicago Title Ins. Co. v. Ellis*, 978 A.2d 281, 288 (N.J. App. Div. 2009)). "'Misappropriation' involves the 'application of another's property or money dishonestly to one's own use.'" *Id.* (quoting Black's Law Dictionary (11th ed. 2019)).

### 3. The Misappropriation of Funds Exclusion Applies to Columbus LTACH's Third-Party Claims against Defendants

The Court next finds that Columbus LTACH's allegations squarely fit under the plain language of the Misappropriation of Funds exclusion. There are nine counts asserted against Defendants in the Second Amended Third-Party Complaint: (1) Conversion; (2) Conspiracy to Commit Conversion; (3) Fraud; (4) Conspiracy to Commit Fraud; (5) Breach of Fiduciary Duty; (6) Accounting; (7) Temporary and Preliminary Freezing Order and Constructive Trust; (8) Liability and Restraint under N.J.S.A. § 12A:9-625; and (9) RICO Conspiracy under N.J.S.A. § 2C:41-4(c).[5] Each of these counts undeniably "originat[e] from, grow[] out of[,] or hav[e] a substantial nexus" to the alleged conversion and misappropriation scheme underlying Columbus LTACH's lawsuit, namely, that Defendants wrongfully and dishonestly used Columbus LTACH's fiduciary accounts to enter into the RPAs without Columbus LTACH's authorization, excluded Columbus LTACH's rights to the accounts by using the funds for their own benefit instead of remitting the funds to Columbus LTACH employees and the federal and state governments, and subsequently concealed from Columbus LTACH the true nature and extent of its tax liabilities. As such, the Misappropriation of Funds exclusion applies to Columbus LTACH's claims.

In their opposition brief, Defendants rely entirely on a claim that they were a victim of a scam perpetrated by TD Bank whereby the bank inexplicably seized and converted Defendants' accounts. They maintain that the "alleged theft and misappropriation of funds was performed by TD Bank and not Drosos[,]" Opp. Br. 22-23, and that Defendants merely

---

[4] "[C]ourts frequently look to how other courts have interpreted the same or similar language in standardized contracts to determine what the parties intended, especially where rules in aid of interpretation fail to offer a clear result." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008).

[5] The remaining counts of the Second Amended Third-Party Complaint are asserted against a third party not named here.

performed an "act of professional negligence" by letting TD Bank seize and convert their assets. Opp. Br. 13. Defendants posit that had TD Bank not emptied the accounts, "Spin Capital would have received its funds and the Underlying Action would never have been commenced." Opp. Br. 16. Thus, the Misappropriation of Funds exclusion is nullified because "the actions of a third-party, TD Bank, are the root cause of the Underlying Action[,]" Opp. Br. 7.

Defendants make multiple arguments in support of their assertion that because TD Bank converted and misappropriated Columbus LTACH's funds, while the Defendants merely committed negligence, the Misappropriation of Funds exclusion does not apply. First, Defendants rely heavily on *Search EDP, Inc. v. Am. Home Assur. Co.*, 632 A.2d 286, 290 (N.J. App. Div. 1993) for the proposition that their "act of professional negligence— allowing TD Bank to seize and convert their assets—is a covered act under the Policy," even if it "set into operation a chain of causation" that resulted in the alleged conversion by TD Bank. Opp. Br. 13-14 (internal quotation marks omitted). Next, Defendants contend that the use of "misappropriation" in the exclusion is ambiguous because it is not explicitly defined in the Policy. Opp. Br. 17. According to Defendants, the term "cannot be interpreted so broadly that an insured could be denied coverage as a result of a conversion committed by a third party following the insured's negligent failure to follow prudent wire procedures." *Id.* Defendants posit that such a reading "would render meaningless the grant of coverage for professional errors and omissions." *Id.* Because the term is purportedly ambiguous, Defendants assert that as the insured, the Court must interpret the term in favor of their "reasonable expectation" that under the Policy, "misappropriation" should be interpreted to "apply only to situations . . . where it is [a] Drosos employee that is allegedly stealing, misappropriating, commingling, or converting clients' funds[,]" and not to misconduct committed by TD Bank or any other third party. Opp. Br. 17-19, 23.

However, Defendants' arguments fail because they each rely on the premise that the insured's version of events—that is, that Defendants merely committed negligence while TD Bank committed the alleged misconduct at issue—is relevant to Plaintiff's duty to defend. As stated *supra*, "it is the nature of the claim *asserted*, rather than the specific details of the incident or the litigation's possible outcome, that governs the carrier's duty to defend." *Kent Motor Cars, Inc.*, 25 A.3d at 1042 (emphasis added) (citation and internal quotation marks omitted). Notably, too, the text of the Misappropriation of Funds exclusion itself specifies that it applies to any "actual or *alleged*" misappropriation or conversion. Compl. Ex. C. at 16 ¶ 22, ECF No. 1-3 (emphasis added). Looking instead at Columbus LTACH's allegations in the Underlying Action, there does not appear to be any allegation of misconduct against TD Bank in the Second Amended Third-Party Complaint. Nor are there any claims that Defendants merely committed a negligent act, error, or omission in their handling of Columbus LTACH's funds. Instead, each count asserted against Defendants specifically allege that Defendants *themselves* converted and misappropriated Columbus LTACH's funds for their own personal gain. Thus, even if the Court were to accept Defendants' assertion that the exclusion should be interpreted to apply only to the

conduct of a "Drosos employee," and not to the conduct of a third party, the exclusion would still apply here.

Accordingly, the Court finds that the plain language of the Policy's Misappropriation of Funds exclusion applies to Columbus LTACH's claims against Defendants.[6]

### B.  Whether Plaintiff Appropriately Reserved its Rights

Next, the parties dispute whether Plaintiff is barred from disclaiming coverage under the equitable doctrine of estoppel. The Court finds that an issue of fact exists as to whether Plaintiff appropriately reserved its rights, and that as such, discovery must proceed on this issue.

As the Supreme Court of New Jersey has explained:

> Under certain circumstances an insurance carrier may be estopped from asserting the inapplicability of insurance to a particular claim against its insured despite a clear contractual provision excluding the claim from the coverage of the policy. The strongest and most frequent situation giving rise to such an estoppel is one wherein a carrier undertakes to defend a law suit based upon a claim against its insured. If it does so with knowledge of facts that are relevant to a policy defense or to a basis for noncoverage of the claim, *without a valid reservation of rights to deny coverage at a later time*, it is estopped from later denying coverage.

*Griggs v. Bertram*, 443 A.2d 163, 167 (1982) (emphasis added). New Jersey courts have found that "the two elements required for equitable estoppel to apply are: (1) 'a misrepresentation as to the fact or extent of coverage, innocent or otherwise, by the insurer or its agent, and (2) reasonable reliance by the insured thereon to his ultimate detriment.'" *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F. Supp. 474, 481 (D.N.J. 1995) (quoting *Martinez v. John Hancock Mut. Life Ins. Co.*, 367 A.2d 904, 911 (N.J. App. Div. 1976)).

Plaintiff asserts that it validly reserved its rights when it agreed to defend Defendants in its letter dated November 16, 2022, approximately two months after it was notified of the Underlying Action. Compl. ¶ 50. Plaintiff also maintains that the letter advised Defendants of their right to independent counsel. *Id.* Defendants admit that they received a letter from Plaintiff on November 16, 2022, but do not admit Plaintiff's characterization of its contents. Answer ¶ 50, ECF No. 8. Curiously, the November 16, 2022 letter is not attached to the pleadings and the Court has not identified it elsewhere in the record.

While estoppel ordinarily presents a triable question of fact, *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 15 F. Supp. 2d 561, 565 (D.N.J. 1998), "the interpretation of

---

[6] Defendants assert a number of other arguments throughout their Opposition Brief, including a request for the Court to view the "totality of the circumstances" and deny Plaintiff's motion. Opp. Br. 10. The Court has considered these arguments and find that they do not merit further discussion at this juncture.

the reservation of rights letter is, like the interpretation of the underlying insurance contract, an issue of law for the court." *Petersen v. New Jersey Mfrs. Ins. Co.*, No. A-0459-12T4, 2014 WL 1716073, at *4 (N.J. App. Div. May 2, 2014). Accordingly, the Court need not presume as true Plaintiff's conclusion that its November 16, 2022 letter included a valid reservation of rights. *See Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) ("Legal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness."). When analyzing whether an insurer properly reserved its rights, New Jersey Courts have looked to the specific language of the insurer's reservation of rights letter along with the full context of other communications between the insurer and its insured. *See Northfield Ins. Co. v. Mt. Hawley Ins. Co.*, 184 A.3d 517, 522 (N.J. App. Div. 2018) (holding that language in an insurance company's reservation of rights letter created a fact issue as to insured's conduct that precluded summary judgment on issue of estoppel); *see also Westport Ins. Corp. v. McClellan*, 475 F. Supp. 3d 447, 454 (E.D. Pa. 2020) ("We must consider the full context of the record when considering [Defendant's] estoppel theory."). Here, viewing the facts presented in the light most favorable to Defendants, the Court cannot say on the limited record before it whether Plaintiff's November 16, 2022 letter validly reserved its rights, and, subsequently, whether the doctrine of estoppel applies. Discovery must be allowed to develop this issue. Thus, the Court declines to enter judgment at this time as to Plaintiff's claims and will **DENY** Plaintiff's Rule 12(c) motion without prejudice.

## C.  Whether Defendants' Counterclaims Must be Dismissed

Plaintiff next moves to dismiss Defendants' counterclaims pursuant to Rule 12(b)(6). Defendants allege three causes of action against Plaintiff: (1) Breach of the Duty of Good Faith and Fair Dealing; (2) Declaratory Judgment; and (3) Breach of Contract. Defs.' Countercls. at 12-18, ECF No. 8.

### 1.  Breach of the Duty of Good Faith and Fair Dealing

Defendants' first counterclaim asserts that Plaintiff breached its fiduciary duty of good faith and fair dealing by refusing to provide indemnity and defense coverage to Defendants for Columbus LTACH's fraud allegations. Defs.' Countercls. ¶¶ 28-29. The counterclaim maintains that the Policy's fraud exclusions do not bar coverage for these allegations. *Id.* ¶ 30. Defendants also contend that Plaintiff breached its good faith duties by "unilaterally and prejudicially repudiating its obligations" under the Policy. *Id.* ¶ 31.

"Where, as here, an insurance contract is at issue, a claim for breach of the implied covenant of good faith and fair dealing is 'tantamount' to a claim for 'bad faith.'" *Veyhl v. State Farm Fire & Cas. Co.*, No. 21CV10112, 2021 WL 6062304, at *2 (D.N.J. Dec. 22, 2021). Under the standard set out by the New Jersey Supreme Court in *Pickett v. Lloyd's*, 621 A.2d 445, 453-54 (N.J. 1993), in order to state a claim for bad faith in the insurance benefits context, "[t]he plaintiff must show that (1) the insurer lacked a 'fairly debatable' reason for its refusal to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Fuscellaro v. Combined Ins. Grp., Ltd.*, No. CIV.A. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011). "In order to meet

the 'fairly debatable' standard, a plaintiff must establish as a matter of law a right to summary judgment on the substantive claim; a plaintiff who cannot do so is not entitled to assert a claim for bad faith—including at the motion to dismiss stage." *TD Bank, N.A. v. Cont'l Ins. Co. of New Jersey*, No. CV 23-1951, 2024 WL 1327971, at *7 (D.N.J. Mar. 28, 2024). "In other words, if there are material issues of disputed fact as to the underlying benefits claim, an insured cannot maintain a cause of action for bad faith." *Fuscellaro*, No. 2011 WL 4549152, at *5.

Because, as discussed *supra*, material issues of fact exist as to whether Plaintiff is estopped from denying coverage to Defendants, the breach of the duty of good faith and fair dealing counterclaim cannot stand. For this reason, the Court will **GRANT** Plaintiff's motion to dismiss Count I of Defendants' counterclaim.[7]

### 2. Declaratory Judgment

Defendants' second counterclaim is for a declaratory judgment regarding the "rights, status, and other legal obligations" of the parties under the Policy. Defs.' Countercls. ¶¶ 35-39. This counterclaim appears to be redundant and subsumed by both Plaintiff's Complaint and Defendants' own counterclaim for breach of contract, and thus, the Court will **GRANT** Plaintiff's motion to dismiss Count II of Defendants' counterclaim. *Liberty Mut. Fire Ins. Co. v. Reade Mfg. Co.*, No. 322CV00003, 2023 WL 3597675, at *5 n.8 (D.N.J. May 23, 2023) ("Where a party brings claims for both declaratory relief and breach of contract, such claims are duplicative in that 'adjudication of the breach of contract claim will still resolve the same issue and necessarily decide the question raised by the declaratory judgment claim.'" (citation omitted)); *M&T Bank v. Worldwide Supply LLC*, No. CV 20-6378, 2021 WL 9667960, at *4 (D.N.J. Feb. 17, 2021) (holding similarly for issues already raised in the complaint and answer).

### 3. Breach of Contract

Lastly, Defendants assert a counterclaim against Plaintiff for breach of contract. "A breach of contract claim requires the plaintiff to prove the existence of 'a valid contract, defective performance by the defendant, and resulting damages.'" *22nd Century Techs., Inc. v. iLabs, Inc.*, No. 22-1830, 2023 WL 3409063, at *3 (3d Cir. May 12, 2023) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). Defendants have adequately pleaded this claim by alleging the existence of the Policy, contending that Plaintiff rejected its obligation under the Policy to defend and indemnify Defendants in the Underlying Action, and asserting that money damages in the form of legal fees and costs will result. Defs.' Countercls. ¶¶ 41-44. Thus, the Court will **DENY** Plaintiff's motion to dismiss Count III of Defendants' counterclaim.

## IV.   CONCLUSION

---

[7] Defendants' counterclaim for breach of the duty of good faith and fair dealing may also be subject to dismissal as duplicative of its breach of contract counterclaim. *See Liberty Mut. Fire Ins. Co. v. Reade Mfg. Co.*, No. 322CV00003, 2023 WL 3597675, at *7 n.10 (D.N.J. May 23, 2023).

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is **DENIED without prejudice**, while Plaintiff's motion to dismiss Defendants' counterclaims pursuant to Rule 12(b)(6) is **GRANTED** as to Counts I and II and **DENIED** as to Count III.

An appropriate Order accompanies this Opinion.

Date: May 21 , 2024

WILLIAM J. MARTINI, U.S.D.J.

11